# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JULIE A. SU, Acting Secretary of Labor,    :
United States Department of Labor,    :
    Plaintiff    :    No. 1:22-cv-00224
    :
    v.    :    (Judge Kane)
    :
WICARE HOME CARE AGENCY, LLC,    :
et al.,    :
    Defendants    :

## MEMORANDUM

This case arises out of the alleged violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., by Defendants WiCare Home Care Agency, LLC ("Defendant WiCare"), and Luis D. Hernandez ("Defendant Hernandez") (collectively "Defendants"). Before the Court are cross motions for summary judgment filed by Defendants (Doc. No. 57) and Plaintiff Julie A. Su, the Acting Secretary of Labor at the United States Department of Labor ("Plaintiff") (Doc. No. 58). Also pending is Plaintiff's motion to strike "Exhibit T" and references to said exhibit in Defendants' summary judgment filings. (Doc. No. 77.) For the reasons that follow, the Court will grant Plaintiff's summary judgment motion and deny Defendants' motion for summary judgment. The Court will also deny Plaintiff's motion to strike "Exhibit T."

## I.    BACKGROUND[1]

---

[1] The following relevant facts of record are taken from Plaintiff's Statement of Undisputed Material Facts ("PSUMF") (Doc. No. 58-4), Defendants' Statement of Undisputed Facts in Support of Their Motion for Summary Judgment ("DSUMF") (Doc. No. 76), and Plaintiff's Counter Statement of Undisputed Facts ("PCUMF") (Doc. No. 80), all of which contain specific citations to the record at each numbered paragraph. Defendants did not file any response to the PSUMF as required by Local Rule 56.1. See L.R. 56.1 (noting that "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried"). Accordingly, the facts contained in PSUMF shall be deemed admitted as it pertains to Plaintiff's

The material facts of this case are generally undisputed. Defendant WiCare is a corporation duly organized under the laws of the Commonwealth of Pennsylvania, registered at 906 Cumberland Street in Lebanon, Pennsylvania. (Doc. No. 58-4 ¶ 1.)[2] Defendant WiCare is a for profit entity that provides in-home care to clients by employing individuals who engage in domestic services. (Id. ¶¶ 2–3.) During the relevant period, which Plaintiff asserts is between the years 2019 and 2021, Defendant WiCare had an annual dollar volume in excess of five-hundred thousand ($500,000) dollars annually. (Id. ¶ 4.)

Defendant WiCare is owned by Defendant Hernandez, who has served as the sole owner and President since 2018. (Id. ¶¶ 5–6.) Defendant Hernandez is responsible for hiring and firing employees, maintaining pay records, setting pay rates, deciding compensation policies, supervising employees, and promulgating work assignments and rules. (Id. ¶¶ 7–9.) Defendant WiCare's employees provide "in-home care services to WiCare's clients" and are "required to sign employment agreements prior to working for WiCare." (Id. ¶¶ 11–12.) The employee agreement sets out rules and responsibilities, provides each employee with a probationary period,

---

motion for summary judgment in accordance with Local Rule 56.1. See id. (highlighting that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party"). The following facts of record are undisputed unless otherwise noted.

The Court notes that, in their PSUMF and DSUMF, the parties promulgate several legal arguments explaining why summary judgment should be granted in their favor. However, Local Rule 56.1 provides that "[a] motion for summary judgment filed pursuant to Fed. R. Civ. P. 56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." See L.R. 56.1 (emphasis added). Accordingly, such legal arguments are inappropriate in the statements of undisputed facts. See Perez v. Great Wolf Lodge of the Poconos LLC, 200 F. Supp. 3d 471, 474 n.1 (M.D. Pa. 2016) (highlighting that statements of undisputed material facts should not contain "legal arguments or conclusions"). The Court will address the parties' legal arguments infra in the discussion section of this memorandum.

[2] As the case caption states, WiCare Home Care Agency is a Limited Liability Company ("LLC").

and contains a non-compete clause.  (<u>Id.</u> ¶ 13.)  Defendant WiCare also provides their direct care worker employees with handbooks at the time of their hiring.  (<u>Id.</u> ¶ 14.)

It is undisputed that some of Defendants' direct care workers did not receive overtime premiums when they worked more than forty (40) hours over the course of a week.  (<u>Id.</u> ¶¶ 16–18.)  During this time, the direct care workers used timesheets to track their work hours, as well as a mobile application, and Defendants concede that they would sometimes "manually remove hours from the employee's timesheet when the Defendants suspected that the employees overstated how much they worked."  (<u>Id.</u> ¶¶ 19–20 (citing Doc. No. 63-6).)  Plaintiff asserts that Defendants have admitted that some direct care workers did not receive proper payment for hours worked, and that there are discrepancies between the hours entered via time sheets and the payments given to employees.  (<u>Id.</u> ¶¶ 21–24.)  It is further undisputed that Defendants were "missing entire payroll records for at least two employees," and that more generally, some of the time records reflect the start of the workweek on Saturday, while others show Sunday as the first day of the workweek, thus evincing an inconsistency for which Defendants have not offered an explanation.  (<u>Id.</u> ¶¶ 26–27.)

Plaintiff asserts that a review of Defendants' records shows that one hundred and eighty-one (181) workers did not receive overtime premiums.  (<u>Id.</u> ¶ 32.)  Plaintiff notes that Defendants owe four hundred and sixty-eight thousand, four hundred and fourteen dollars and twenty-five cents ($468,414.25) in back wages to those one hundred and eighty-one (181) employees.  (<u>Id.</u> ¶ 35.)  Plaintiff further maintains that Defendants owe sixty-one thousand, three hundred and fifty-

four dollars and eighty-four cents ($61,354.84) in minimum wage back wages to eighty-eight (88) employees.  (Id. ¶ 37.)[3]

In their DSUMF, Defendants highlight several facts they find relevant to the Court's resolution of the pending motions.  (Doc. No. 76.)  Defendant WiCare was founded by Defendant Hernandez following a period where Defendant Hernandez and his family cared for his elderly father-in-law in their family home, until his father-in-law's passing.  (Id. ¶ 2.) Defendant Hernandez, a pastor at a church in Lebanon, Pennsylvania, experienced a language barrier with companionship companies and caregivers during his time caring for his father-in-law, and as such, opened Defendant WiCare to provide companionship services to the community with the goal of giving Spanish speaking families a viable companion care option. (Id. ¶¶ 3–6.)  Defendant WiCare provides companionship for elderly and infirm individuals and helps with the "tasks of daily living."  (Id. ¶ 7.)

Defendants assert that approximately three quarters of their employees "are direct family members of WiCare clients," with thirty (30) to forty (40) percent of employees "residing in the same household as their client."  (Doc. No. 76 ¶¶ 9–10.)  Plaintiff denies these factual assertions, claiming that Defendant Hernandez has admitted to not knowing these data points precisely. (Doc. No. 80 ¶¶ 10–11.)[4]  It is undisputed that Defendants remain in business today.  (Doc. No. 58-4 ¶ 54.)

---

[3] As noted supra, as it pertains to Plaintiff's motion, these facts are deemed admitted due to Defendants' failure to file a response in accordance with Local Rule 56.1.  The DSUMF (Doc. No. 76) does not address the payment of minimum wage or overtime wages because Defendants rest on the argument that they are not covered by the FLSA and thus not governed by the statutory requirements set forth therein.

[4] In Plaintiff's response to the DSUMF, Plaintiff challenges several of Defendants' assertions regarding the Department of Labor's investigation, the relevant fact sheets promulgated by the Department of Labor discussing the FLSA's application, as well as the purported good faith of

On February 15, 2022, Plaintiff initiated the instant action against Defendants, filing a complaint alleging that Defendants violated the following FLSA provisions: Section Six (6), the minimum wage provision; Section Seven (7), the overtime provision; Section Eleven (11), the recordkeeping provision; and Sections Fifteen (15)(a)(2) and (a)(5), the anti-retaliation provisions.  (Doc. No. 1.)  On April 29, 2022, Defendants filed an answer.  (Doc. No. 7.)  On

---

Defendant Hernandez in complying with the FLSA.  (Doc. Nos. 76 ¶¶ 13–28; 80 ¶¶ 13–28.) Plaintiff also responds to Defendants' statements addressing: (a) whether Defendants engage in interstate commerce; (b) whether Defendants provide companionship services, and accordingly if they qualify for the Companionship Exemption to the FLSA; (c) if the Department of Labor fact sheets and final rule interpreting the Companionship Exemption are void for vagueness; (d) the appropriateness of liquidated damages; and (e) whether Plaintiff, Acting Secretary Su, has the authority to pursue this case in the first place.  (Doc. Nos. 76 ¶¶ 28–131; 80 ¶¶ 28–131).  Simply put, these are not relevant material facts.  They generally involve legal questions, or mixed questions of law or fact.  While the Court will consider all these arguments in the discussion section of this memorandum, the Court is unpersuaded that highlighting the many objections and disputes raised in the cited paragraphs of these filings would serve any purpose but to confuse the reader.  See, e.g., Guerrero-Lasprilla v. Barr, 589 U.S. 221, 238, (2020) (Thomas, J., dissenting) (noting that "[f]or well over a century, this Court has recognized questions of law, questions of fact, and mixed questions of law and fact as three discrete categories"); see also Walsh v. E. Penn Mfg. Co., 555 F. Supp. 3d 89, 130 (E.D. Pa. 2021) (holding that "[w]hether an employer's conduct under the FLSA was in good faith and reasonable is a mixed question of law and fact") (citing Chao v. Hotel Oasis, Inc., 493 F.3d 26, 35 (1st Cir. 2007)); Sloane v. Gulf Interstate Field Servs., Inc., No. 15-cv-01208, 2016 WL 878118, at *5 (W.D. Pa. Mar. 8, 2016) (stating that "federal courts have held that whether a plaintiff falls within a particular exemption under the FLSA overtime provision constitutes a mixed question of law and fact, and ultimately requires courts to examine the historical and record facts"); San Filippo v. Bongiovanni, 961 F.2d 1125, 1133 (3d Cir. 1992) (finding that the application of the "void for vagueness doctrine" is "purely an issue of law").

Pending before the Court is Defendants' motion (Doc. No. 92) to strike Plaintiff's PCUMF (Doc. No. 80).  In the brief in support of their motion, Defendants argue that Plaintiff's PCUMF "is not short and concise" and contains improper legal conclusions.  (Doc. No. 92-1 at 3–8.)  Simply put, Defendants in the DSUMF, and Plaintiff in the PCUMF, each promulgate legal arguments and conclusions.  The Court disregards these legal arguments in formulating the fact section of this memorandum, thus ensuring that the fact section contains only the material facts necessary to the resolution of the pending motions and instead addresses these arguments infra in the discussion section of this memorandum.  Accordingly, the Court will deny Defendants' motion (Doc. No. 92) to strike.

June 29, 2022, following the filing of a case management plan, the Court set a close of fact discovery date of December 30, 2022.  (Doc. Nos. 11, 13.)  On August 29, 2022, the Court referred this case to Magistrate Judge Carlson for the purpose of conducting a settlement conference.  (Doc. No. 15.)  When the case did not settle, the Court received and granted several motions to extend the time to complete discovery.  (Doc. Nos. 17, 18, 19, 20, 23, 24, 25, 28, 29, 32, 33.)  On June 21, 2023, Defendant filed a Motion Upon Stipulation for a Protective Order pursuant to Federal Rule of Evidence 502(d) (Doc. No. 34), and the Court granted this motion (Doc. No. 35).  On August 31, 2023, the Court referred the parties to Magistrate Judge Schwab for the purpose of conducting a settlement conference.  (Doc. No. 40.)  Following notification that this case again did not settle (Doc. No. 47), the Court set a dispositive motion deadline of April 1, 2024 (Doc. No. 49).

On March 29, 2024, the Court granted Defendants' unopposed motion to extend the dispositive motion deadline to April 15, 2024, and permitted the parties to exceed the page limit delineated in the Local Rules of this Court.  (Doc. No. 55.)  On April 15, 2024, both parties moved for summary judgment.  (Doc. Nos. 57, 58.)  Plaintiff filed a Statement of Undisputed Material Facts with her motion.  (Doc. No. 58-4.)  On April 17, 2024, Plaintiff filed twenty-four (24) exhibits in support of her motion for summary judgment.  (Doc. Nos. 63 through 63-23.)  On April 29, 2024, Plaintiff filed a brief in support of her motion. (Doc. No. 64.)  On April 30, 2024, Defendants filed a Statement of Undisputed Facts (Doc. No. 67), as well as several exhibits in support of their motion for summary judgment (Doc. Nos. 67-1 through 67-19).  Defendants also filed a brief in support of their motion for summary judgment (Doc. No. 68), which was later stricken due to a failure to adhere to the page limit prescribed in the Court's March 29, 2024 Order.  See (Doc. No. 74).  On May 22, 2024, Defendants filed a revised brief in

support of their motion for summary judgment (Doc. No. 75), a new Statement of Undisputed

Facts (Doc. No. 76), and twenty (20) exhibits (Doc. Nos. 76-1 through 76-20). On June 5, 2024,

Plaintiff filed a motion (Doc. No. 77) to strike any reference to "Exhibit T" (Doc. No. 76-20) in

Defendants' filings. That same day, Plaintiff filed a brief in support of its motion to strike. (Doc.

No. 78.) On June 11, 2024, Plaintiff filed a brief opposing Defendants' motion for summary

judgment (Doc. No. 79), as well as an answer to Defendants' statement of facts (Doc. No. 80).

On June 18, 2024, Defendants filed a brief opposing Plaintiff's motion to strike "Exhibit T."

(Doc. No. 81.) On June 25, 2024, Defendants filed an untimely brief in opposition to Plaintiff's

motion for summary judgment. (Doc. No. 82.)[5] On July 2, 2024, Plaintiff filed a reply brief in

---

[5] In the Court's May 15, 2024 Order, the Court explicitly delineated that "[t]he parties shall have
until June 11, 2024 to respond to the respective motions for summary judgment." (Doc. No. 74
at 3.) Defendants' brief, filed on June 25, 2024, is thus untimely. In accordance with Local Rule
7.6, parties who fail to respond to motions in the time limits prescribed by the Local Rules or
court orders "shall be deemed not to oppose such motion." See L.R. 7.6. The Court therefore
rejects Defendants' filing as untimely, and Plaintiff's motion for summary judgment is deemed
unopposed. However, for the sake of a complete record, the Court has reviewed Defendants'
opposition brief. Nothing in the brief alters the analysis contained infra, and in fact, the brief
largely contains arguments set forth in Defendants' briefing in support of their own motion for
summary judgment.

The Court further observes that, on July 30, 2024, Defendants filed a motion for leave, seeking
permission to file an untimely brief in opposition to Plaintiff's motion for summary judgment.
(Doc. No. 94.) Attached to that motion is a proposed brief (Doc. No. 94-1), as well as a
proposed response to PSUMF (Doc. No. 94-2). The Court notes that the arguments raised in the
proposed brief (Doc. No. 94-1), are largely the same as those raised in the original untimely filed
brief (Doc. No. 82). Each of Defendants' substantive arguments are already addressed infra in
the discussion section of this memorandum. Defendants raise only one new line of argument,
relating to the insufficiency of Plaintiff's back wage calculations, and the Court will address that
infra, in the discussion of Plaintiff's motion for summary judgment. However, nothing in the
proposed brief alters the Court's analysis or conclusion in this case.

As it pertains to Defendants' proposed response to PSUMF (Doc. No. 94-2), the Court notes that
Defendants filed this proposed response more than a month after the Court's Order instructing
the parties to respond to the pending summary judgment motions by June 11, 2024 (Doc. No. 74
at 3). To that end, in accordance with Local Rules 7.6 and 56.1, the Court will not permit the
filing of Defendants' proposed response to PSUMF. See L.R. 7.6 (providing that the "LR 56.1

support of its motion to strike.  (Doc. No. 86.)  On July 8, 2024, Defendants filed a motion for a status conference.  (Doc. No. 87.)  On July 9, 2024, Plaintiff filed a brief opposing Defendants' motion for a status conference.  (Doc. No. 88.)  On July 18, 2024, Plaintiff filed a motion to amend her response to Defendants' DSUMF.  (Doc. No. 89.)  Plaintiff subsequently filed a brief in support of her motion.  (Doc. No. 90.)  On July 23, 2024, Defendants filed a motion (Doc. No. 92) to strike Plaintiff's counter statement of material facts (Doc. No. 80), and subsequently filed a brief in support of that motion (Doc. No. 93).  On July 30, 2024, Defendants filed a motion for leave to permit them to file their brief in opposition to Plaintiff's motion for summary judgment outside of the Court's prescribed deadlines.  (Doc. No. 94.)  Defendants also filed their proposed brief opposing Plaintiff's motion for summary judgment (Doc. No. 94-1), proposed response to PSUMF (Doc. No. 94-2), as well as a brief in support of their motion for leave (Doc. No. 95). Accordingly, the pending motions are fully briefed and ripe for disposition.

## II.    LEGAL STANDARDS

### A.    Motion for Summary Judgment Under Federal Rule of Civil Procedure 56

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable factfinder to return a verdict for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49

---

responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief"); see also L.R. 56.1 (noting that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party").

(1986).  At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.  See id. at 251–52.  In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion."  See A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  See Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145–46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  See Berckeley Inv. Grp. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted.  See Celotex, 477 U.S. at 322.  With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant a motion for summary judgment when the non-movant's evidence is merely colorable, conclusory, or speculative.  See Anderson, 477 U.S. at 249–50.  There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts.  See id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Further, a party may not defeat a motion for summary judgment with evidence that would not be admissible at trial.  See Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 (3d Cir. 1999).

Additionally, the "[c]oncurrent resolution of cross-motions for summary judgment can present a formidable task," because Federal Rule of Civil Procedure Fifty-Six (56) requires that the "court view all facts in the light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences." See Interbusiness Bank, N.A. v. First Nat'l Bank of Mifflintown, 318 F. Supp. 2d 230, 235 (M.D. Pa. 2004). To that end, while "[c]ourts are permitted to resolve cross-motions for summary judgment concurrently[,] . . . [w]hen doing so, the court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion." See Hawkins v. Switchback MX, LLC, 339 F. Supp. 3d 543, 547 (W.D. Pa. 2018) (citations omitted); see also Richman & Richman Real Est., LLC v. Sentinel Ins. Co., Ltd., No. 16-cv-01855, 2017 WL 4475963, at *2 (E.D. Pa. June 13, 2017) (noting that "[c]ourts treat cross-motions for summary judgment as if they were distinct, independent motions, and must rule on each party's motion on an individual and separate basis").

### B.    Motion to Strike Under Federal Rule of Civil Procedure 12(f)

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." See Fed. R. Civ. P. 12(f). "'Immaterial' matter is that which has no essential or important relationship to the claim for relief." Del. Health Care Inc. v. MCD Holding Co., 893 F. Supp. 1279, 1292 (D. Del. 1995). "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." Cech v. Crescent Hills Coal Co., No. 96-cv-02185, 2002 WL 31002883, at *28 (W.D. Pa. July 15, 2002). "A 'scandalous' matter or pleading is one that casts a derogatory light on someone, uses repulsive language, or detracts from the dignity of the court." Carone v. Whalen, 121 F.R.D. 231, 232 (M.D. Pa. 1988). While courts are specifically empowered with the ability to invoke Rule 12(f) sua sponte, striking a pleading is a

drastic remedy and should be used sparingly.  See Krisa v. Equitable Life Assurance Soc'y, 109

F. Supp. 2d 316, 319 (M.D. Pa. 2000).  "Motions to strike are decided on the pleadings alone,

and should not be granted unless the relevant insufficiency is 'clearly apparent.'"  Thomas v.

Keystone Real Estate Grp., No. 14-cv-00543, 2015 WL 1471273, at *6 (M.D. Pa. Mar. 31, 2015)

(quoting Cipollone v. Liggett Grp., Inc., 789 F.2d 181, 188 (3d Cir. 1986)).  Therefore, as a

general rule, motions to strike are disfavored, and "should be denied unless the challenged

allegations have no possible relation or logical connection to the subject matter of the

controversy and may cause some significant form of prejudice to one of the parties to the

action."  See Mifflinburg Tel., Inc. v. Criswell, 80 F. Supp. 3d 566, 572 (M.D. Pa. 2015)

(citations omitted); Powell v. Wetzel, No. 12-cv-02455, 2014 WL 2472048, at *4 (M.D. Pa. Feb.

25, 2014) (citations omitted); Trivedi v. Slawecki, No. 11-cv-02390, 2013 WL 1767593, at *2

(M.D. Pa. Apr. 24, 2013) (citations omitted).

## III.   DISCUSSION

The Court first examines the applicable legal standards and relevant FLSA provisions,

before addressing Plaintiff's motion for summary judgment.  The Court then examines

Defendants' motion for summary judgment and the appropriate remedies, before addressing

Plaintiff's motion to strike.

### A.   The FLSA's Coverage and Relevant Provisions

The FLSA was enacted in 1938 "to protect covered workers from substandard wages and

oppressive working hours."  See Friedrich v. U.S. Computer Servs., 974 F.2d 409, 412 (3d Cir.

1992).  Pursuant to 29 U.S.C. § 206(a)(1)(C), employees "who, in any workweek, are engaged in

commerce or the production of goods for commerce, or are employed in an enterprise engaged in

commerce or in the production of goods for commerce" must be paid at least seven dollars and

twenty-five cents ($7.25) in hourly wages.  See Rui Tong v. Henderson Kitchen Inc., No. 17-cv-

11

01073, 2018 WL 4961622, at *3 (E.D. Pa. Oct. 12, 2018) (citing 29 U.S.C. § 206(a)(1)(C)). "The FLSA's minimum wage provisions apply to those that fall under the statutory definition of 'employees' and 'employers.'" Burrell v. Staff, 60 F.4th 25, 43 (3d Cir. 2023). "When determining whether someone is an employee under the FLSA, 'economic reality rather than technical concepts is to be the test of employment.'" In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig., 683 F.3d 462, 467 (3d Cir. 2012) (citation omitted). Because the FLSA was "part of the large body of humanitarian and remedial legislation enacted during the Great Depression," see Brock v. Richardson, 812 F.2d 121, 123 (3d Cir. 1987), courts generally recognize the liberal definitions of employer and employee contained therein. See Burrell, 60 F.4th at 43.

To that end, the FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization," see 29 U.S.C. § 203(d), and defines an employee as "any individual employed by an employer." See 29 U.S.C. § 203(e)(1). "Because of the breadth of the FLSA, the employer need not necessarily have ultimate control for an employer-employee relationship to exist; even indirect control may be sufficient. In other words, the alleged employer must exercise significant control." Solis v. A-1 Mortg. Corp., 934 F. Supp. 2d 778, 788 (W.D. Pa. 2013) (cleaned up). Additionally, in order to determine whether a joint employment relationship exists under the FLSA, insofar as multiple entities can simultaneously be classified as someone's "employer," the United States Court of Appeals for the Third Circuit has set forth a four-part test in which courts should consider the alleged employer's "(1) 'authority to hire and fire' the relevant employees; (2) 'authority to promulgate work rules and

assignments' and to set the employees' conditions of employment; (3) 'involvement in day-to-day employee supervision, including employee discipline;' and (4) 'actual control of employee records, such as payroll, insurance, or taxes.'"  See Sec'y United States Dep't of Lab. v. Mosluoglu, Inc., No. 22-2749, 2023 WL 5972044, at *2 (3d Cir. Sept. 14, 2023) (citing In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig., 683 F.3d at 469); see also Thompson v. Real Est. Mortg. Network, 748 F.3d 142, 153 (3d Cir. 2014) (noting that "[a]side from the corporate entity itself, a company's owners, officers, or supervisory personnel may also constitute 'joint employers' for purposes of liability under the FLSA").  When an employee is subject to FLSA coverage because they "are employed in an enterprise engaged in commerce or the production of goods for commerce," courts often refer to their employer as having "enterprise coverage."  See Quagliariello v. DiPasquale, No. 20-cv-00699, 2021 WL 2287426 at *6 (M.D. Pa. Feb. 9, 2021).

The FLSA minimum wage provision applies to employers and employees who are "engaged in commerce or the production of goods for commerce, or . . . employed in an enterprise engaged in commerce or in the production of goods for commerce."  See 29 U.S.C. § 206(a).  Congress further specified that "the employment of persons in domestic service in households affects commerce," see 29 U.S.C § 202(a), and thus domestic service employers and their employees receive FLSA minimum wage protections.  Additionally, the FLSA defines an "[e]nterprise engaged in commerce or in the production of goods for commerce" as one who:

> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated);
>
> (B) is engaged in the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution, a school for mentally or physically handicapped or gifted

13

children, a preschool, elementary or secondary school, or an institution of higher education (regardless of whether or not such hospital, institution, or school is public or private or operated for profit or not for profit); or

(C) is an activity of a public agency.

See 29 U.S.C. § 203(s)(1).

Furthermore, as it pertains to overtime wages, 29 U.S.C. § 207(a)(1) provides that:

no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

See 29 U.S.C. § 207(a)(1).  Accordingly, the triggering language in the FLSA overtime provision is identical to that contained in the minimum wage provision: employers and employees engaged in commerce are subject to the FLSA's overtime provision.  See id.

However, as it pertains to overtime pay, Congress crafted an exemption for "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)."  See 29 U.S.C § 213(15).  In 2015, the Department of Labor clarified the application of the Companionship Exemption from the FLSA overtime requirement, stating that "[t]hird party employers of employees engaged in companionship services within the meaning of § 552.6 may not avail themselves of the minimum wage and overtime exemption provided by section 13(a)(15) of the Act, even if the employee is jointly employed by the individual or member of the family or household using the services."  See 29 C.F.R. § 552.109.  The regulation further provides that "the individual or member of the family or household, even if considered a joint employer, is still entitled to assert the exemption, if the employee meets all of the requirements of § 552.6."  See id.  29 C.F.R. § 552.6 defines companionship services as the

provision of fellowship and protection for an elderly person or person with an illness, injury, or disability who requires assistance in caring for himself or herself. The provision of fellowship means to engage the person in social, physical, and mental activities, such as conversation, reading, games, crafts, or accompanying the person on walks, on errands, to appointments, or to social events. The provision of protection means to be present with the person in his or her home or to accompany the person when outside of the home to monitor the person's safety and well-being.

See 29 C.F.R. § 552.6.

Besides establishing "baseline standards through 'federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract,'" see Smiley v. E.I. Dupont De Nemours & Co., 839 F.3d 325, 329–30 (3d Cir. 2016) (citation omitted), the FLSA also includes robust recordkeeping requirements. 29 U.S.C. § 211(c) requires, in relevant part, that "[e]very employer subject to any provision of this chapter . . . shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him." See 29 U.S.C. § 211(c). Further, regulations promulgated by the Department of Labor require an employer to "maintain and preserve payroll or other records . . . with respect to each employee to whom section 6 or both sections 6 and 7(a) of the [Fair Labor Standards] Act apply," and requires that those records contain the "[t]ime of day and day of week on which the employee's workweek begins," the "regular hourly rate of pay for any workweek in which overtime compensation is due," and the "[h]ours worked each workday and total hours worked each workweek." See 29 C.F.R. § 516.2(a)(5)–(7). The United States Court of Appeals for the Third Circuit further specified that 29 U.S.C. § 211(c) requires "employers to maintain accurate records to ensure that all workers are paid the minimum wage for every hour worked." See Williams v. Tri-Cnty. Growers, Inc., 747 F.2d 121, 128 (3d Cir. 1984) (emphasis added).

### B.    Plaintiff's Motion for Summary Judgment

Plaintiff asks the Court to grant summary judgment in her favor as to nine issues: (1) Defendant WiCare and its direct care workers are covered by the FLSA; (2) Defendant Hernandez is individually liable as an employer under the FLSA; (3) Defendants violated the FLSA's minimum wage provision; (4) Defendants violated the FLSA's overtime provision; (5) Defendants violated the FLSA's recordkeeping provision; (6) Defendants' FLSA violations were willful; (7) Defendants are liable for five hundred and twenty-nine thousand, seven hundred and seventy dollars and nine cents ($529,770.09) in back wages; (8) Defendants are liable for liquidated damages; and (9) Defendants are enjoined from further FLSA violations.  (Doc. No. 58-1.)

### 1.    Whether Defendant WiCare and its Employees are Covered by the FLSA

Plaintiff asserts that Congress made a clear choice in enacting Section 2(a) of the FLSA, in which it specifically noted that "domestic service employees affect commerce."  (Doc. No. 64 at 11.)  Plaintiff argues that, because Defendants effectively concede that their employees are engaged in domestic service, it follows that said employees are subject to the FLSA's protections.  (Id.)  Plaintiff further asserts that, even if Defendants' employees are not explicitly covered under the FLSA, Section 3(s)(1)(A) covers Defendant Wicare as an employer, insofar as Defendant WiCare is engaged in providing domestic services and its annual dollar value exceeds five-hundred thousand ($500,000) dollars.  (Id.)

As an initial matter, Congress made a clear choice in 29 U.S.C § 202(a), delineating that "Congress further finds that the employment of persons in domestic service in households affects commerce."  See 29 U.S.C. § 202(a); see also Mitchell v. Lublin, McGaughy & Assocs., 358 U.S. 207, 211 (1959) (noting that "within the tests of coverage fashioned by Congress, the [FLSA] has been construed liberally to apply to the furthest reaches consistent with

congressional direction").  As discussed <u>supra</u>, FLSA's minimum wage and overtime provisions apply to employers or employees "engaged in commerce or the production of goods for commerce, or . . . employed in an enterprise engaged in commerce or in the production of goods for commerce."  <u>See</u> 29 U.S.C. § 206(a).  Since Congress explicitly declared that domestic service workers affect commerce, the Court next must determine whether Defendant WiCare and its employees are engaged in domestic service.  To that end, 29 C.F.R. § 552.3 specifically provides that:

> the term domestic service employment means services of a household nature performed by an employee in or about a private home (permanent or temporary). The term includes services performed by employees such as <u>companions</u>, babysitters, cooks, waiters, butlers, valets, maids, housekeepers, nannies, nurses, janitors, laundresses, caretakers, handymen, gardeners, home health aides, personal care aides, and chauffeurs of automobiles for family use. This listing is illustrative and not exhaustive.

<u>See</u> 29 C.F.R. § 552.3 (emphasis added).  It is undisputed that Defendant WiCare provides "in-home care" and employs "persons in domestic service for profit."  (Doc. No. 58-4 ¶¶ 2–3); <u>see also</u> (Doc. No. 63-2 at 6 (containing Defendants' responses to Plaintiff's requests for admission, in which Defendants assert that their employees qualify for the "Companionship Services Exemption" to the FLSA).)  Considering the text of 29 C.F.R. § 552.3, the Court finds that Defendants and its employees perform domestic services and thus are "engaged in commerce" pursuant to the FLSA.  <u>See</u> 29 U.S.C. § 206(a).  Accordingly, the Court will grant Plaintiff's motion for summary judgment on the question of whether Defendant WiCare and its employees are covered under the FLSA.

### 2.    Whether Defendant Hernandez is an "Employer" under the FLSA

Plaintiff offers several arguments in support of her position that Defendant Hernandez is a covered "employer" and thus personally liable for damages under the FLSA.  Plaintiff asserts that Defendant Hernandez is the "sole owner and President of WiCare," manages "hiring, firing,

scheduling, supervising, disciplining, and setting the policies and conditions of employees," and requires all direct care workers to sign employee agreements before beginning work for WiCare. (Doc. No. 64 at 13.)  It follows, according to Plaintiff, that Defendant Hernandez is an employer under the relevant authority.  (Id. at 14.)  Defendants do not offer any timely arguments in response to Plaintiff's assertion as to Defendant Hernandez's personal liability.[6]

As discussed supra, the Third Circuit articulated a four-part test for courts to utilize when examining "a potential joint employment relationship under the FLSA."  See In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig., 683 F.3d at 469.[7]  This Court accordingly considers:

> (1) the alleged employers authority to hire and fire the relevant employees; (2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; (3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and 4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes.

See id. (hereinafter the "Enterprise" factors).

On the first factor, in PSUMF, Plaintiff notes that Defendant Hernandez is the "sole owner" of WiCare, has served in that role since 2018, and is responsible for decisions ranging from hiring and firing to compensation policies.  (Doc. No. 58-4 ¶¶ 5–8.)  Accordingly, there is no genuine dispute that Defendant Hernandez, as the sole owner of WiCare with operational

---

[6]  In their untimely brief opposing Plaintiff's motion for summary judgment, Defendants argue that "[t]he people acting in the interest of an employer are defined as part of . . . the employer," and thus Defendant Hernandez "is WiCare."  (Doc. No. 82 at 10.)  Defendants do not cite any authority in support of their position.

[7]  The question of whether a joint employment relationship exists is pertinent because the Court decided supra that Defendant WiCare is covered by the FLSA.  Accordingly, if Defendant Hernandez is found to be a joint employer with Defendant WiCare, Defendants together would be jointly liable for any FLSA violations.

responsibilities, possesses the authority to hire and fire employees.  This cuts in favor of finding that Defendant Hernandez is an employer pursuant to the FLSA.

As to the second factor—the alleged employer's authority to promulgate work rules and assignments and to set conditions of employment—it is undisputed that Defendant Hernandez "made decisions related to compensation policies affecting Defendant WiCare's employees." (Id. ¶¶ 7–8.)  It is further undisputed that "[d]uring the relevant period, Defendant Luis Hernandez's duties also included supervising employees and promulgating work rules and assignments."  (Id. ¶ 9 (citing Doc. No. 63-3 at 6).)[8]  Accordingly, Defendants raise no genuine dispute on the question of whether Defendant Hernandez exercised sufficient control over the work rules and employment conditions.  This factor also points towards a finding that Defendant Hernandez is an employer under the FLSA.

The third factor examines "the alleged employer's involvement in day-to-day supervision."  See In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig., 683 F.3d at 469. Because neither party discusses this element at any length as it pertains to Defendant Hernandez individually, the Court therefore finds that this factor is neutral.

Finally, in examining the fourth Enterprise factor, Plaintiff asserts that Defendant Hernandez "is in control of employee records."  (Doc. No. 64 at 11.)  It is undisputed that Defendant Hernandez was "responsible for . . . maintaining employees' pay records."  (Doc. No.

---

[8]  Docket Number 63-3 consists of interrogatory responses from Defendants.  In paragraph ten (10), which Plaintiff cites, Defendants concede that Defendant Hernandez was involving with "hiring, terminating employment, training, supervising, scheduling, timekeeping, setting rates of pay, maintaining employment records, assigning work, determining benefits, setting employment policies, reviewing or administering payroll, and signing or distributing paychecks."  See (Doc. No. 63-3 at 6).

58-4 ¶ 7.)  Accordingly, this factor also cuts in favor of finding a joint employment relationship, whereby Defendant Hernandez can be considered an employer under the FLSA.

The Third Circuit has stated that the four <u>Enterprise</u> factors are "not exhaustive."  <u>See In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.</u>, 683 F.3d at 469.  However, because the Court observes no other "indicia" which reflect that Defendant Hernandez does not have "significant control" over Defendant WiCare, and further observes that three of the four <u>Enterprise</u> Factors favor a finding of joint employment, the Court concludes that Defendant Hernandez is an employer and thus covered by the FLSA in his individual capacity.  <u>See id.</u>; <u>see also</u> <u>Thompson</u>, 748 F.3d at 153 (noting that "[a]side from the corporate entity itself, a company's owners, officers, or supervisory personnel may also constitute 'joint employers' for purposes of liability under the FLSA").  Accordingly, because Defendants fail to provide evidence raising a genuine dispute of material fact on this issue, the Court will grant Plaintiff's motion for summary judgment as to the question of whether Defendant Hernandez is liable for his FLSA violations as an employer.

### 3.   Whether Defendants Failed to Comply with FLSA's Minimum Wage Requirement

Plaintiff moves for summary judgment on the question of whether Defendants violated the FLSA's minimum wage provision, set forth at 29 U.S.C. § 206.  It is undisputed that eighty-eight (88) employees are owed sixty-one thousand, three hundred and fifty-four dollars and eighty-four cents ($61,354.84) due to Defendants' failure to pay them the minimum wage required by the FLSA.  (Doc. No. 58-4 ¶ 37.)  Accordingly, viewing the record as a whole, and construing all facts in the light most favorable to Defendants, the Court finds that summary judgment as to Plaintiff's minimum wage claim is proper.  As noted <u>supra</u>, Defendants filed an untimely brief opposing Plaintiff's motion for summary judgment and did not file a response to

PSUMF.  Instead, Defendants appear to rest on the argument that they and their employees are not covered by the FLSA.  However, the Court has determined that Defendant WiCare, its employees, and Defendant Hernandez, are covered by the FLSA and thus subject to the statute's minimum wage provision.  Because there is no factual dispute that Defendants did not pay all their employees minimum wages, the Court will grant Plaintiff's motion for summary judgment as to Defendants' violation of the FLSA's minimum wage provision.

> ### 4.     Whether Defendants Failed to Comply with FLSA's Overtime Requirement

Plaintiff also moves for summary judgment as to Defendants' violation of the FLSA's overtime wage provision, set forth at 29 U.S.C. § 207(a)(1).  It is undisputed that one-hundred and eighty-one (181) workers are owed four hundred and sixty-eight thousand, four hundred and fourteen dollars, and twenty-five cents ($468,414.25) in back wages due to overtime violations. (Doc. No. 58-4 ¶ 35.)  Accordingly, viewing the record as a whole, and construing all facts in the light most favorable to Defendants, the Court finds that summary judgment as to Plaintiff's overtime claim is proper.  As noted supra, Defendants filed an untimely brief opposing Plaintiff's motion for summary judgment and did not file a response to PSUMF.  Instead, Defendants again rest on the argument that they and their employees are not covered by the FLSA.  However, the Court has determined that Defendant WiCare, its employees, and Defendant Hernandez, are covered by the FLSA and thus subject to the statute's requirement that workers receive one and half (1.5) times their normal wages for hours worked in excess of forty (40) hours in a week. Because there is no factual dispute that Defendants did not pay all their employees the proper

overtime premiums, the Court will grant Plaintiff's motion for summary judgment as to Defendants' violation of the FLSA's overtime requirement.[9]

### 5.    Whether Defendants Failed to Comply with FLSA's Recordkeeping Provision

Plaintiff moves for summary judgment as to Defendants' alleged violation of the FLSA's recordkeeping provision, set forth at 29 U.S.C. § 211(c), maintaining that Defendants "submitted inaccurate payroll records," and "admitted that the hours on their payroll records are not consistent" with employee time records.  (Doc. No. 64 at 19.)  It is undisputed that "Defendant's payroll records and time records show inconsistencies between hours worked and hours paid. There were instances where an employee's time sheet reflected hours worked that did not appear in the corresponding payroll record."  (Doc. No. 58-4 ¶ 25.)  In PSUMF, she cites, as an example, the payroll document and time record for Ms. Adelaida Soto Martinez ("Ms. Soto Martinez").  (Id.)  Ms. Soto Martinez's time record indicates that she worked seventy-two (72) hours during the pay period running from January 26, 2020, to February 1, 2020, but was paid only for thirty-six (36) hours of work.  (Doc. No. 63-10.)  Plaintiff also cites the Declaration of Edna Berrios ("Ms. Berrios"), another of Defendants' employees.  (Doc. No. 58-4 ¶ 25 (citing Doc. No. 63-11).)  In her Declaration, Ms. Berrios asserted, under penalty of perjury, that she was "generally not paid time and a half" for hours worked over forty (40) in one work week.

---

[9]  In the proposed brief opposing Plaintiff's motion for summary judgment (Doc. No. 94-1), Defendants assert that Plaintiff has not provided admissible evidence regarding the basis for its damages computation (id. at 9–12), and further maintain that Plaintiff's damages calculations require expert testimony, which Plaintiff has not provided here (id. at 12–14).  However, the Court observes that Plaintiff submitted the Declaration of Department of Labor Investigator Maria Nunez (Doc. No. 63-8), in which Ms. Nunez outlines, at some length, how she calculated the back wages owed to Defendants' employees.  Additionally, Defendants fail to cite any binding authority which requires expert testimony in support of back wage calculations. Accordingly, Defendants' arguments on this point are unavailing.

(Doc. No. 63-11.)  Plaintiff further cites the Declaration of Parbatie Samaroo, who stated under penalty of perjury that Defendants "would routinely pay me for fewer hours than I actually worked."  (Doc. No. 63-12.)  Finally, it is undisputed that Defendants "were missing entire payroll records for at least two employees."  (Doc. No. 58-4 ¶ 26 (citing Doc. No. 63-8 (containing the Declaration of Investigator Maria Nunez of the United States Department of Labor)).)

Viewing the record as a whole and in the light most favorable to Defendants as the non-moving party, the Court concludes that there is no genuine dispute of material fact as to whether Defendants violated FLSA's recordkeeping provision, and the Court will therefore grant summary judgment for Plaintiff on that question.  As an initial matter, "an employer commits a per se recordkeeping violation exists when its records are inadequate."  See Walsh v. E. Penn Mfg. Co., 555 F. Supp. 3d 89, 113 (E.D. Pa. 2021).  Under the FLSA, an employer may not "manipulate the records to reduce the number of hours worked."  See Solis, 934 F. Supp. 2d at 806.  Here, Plaintiff presents both payroll and time record evidence, as well as declarations from multiple employees, in support of the fact that there are inexplicable discrepancies.  The evidence of record indicates that several employees submitted timesheets reflecting their hours worked, while the corresponding pay records indicate that they were not paid for all of these hours.  See (Doc. Nos. 63-9; 63-13).  This necessarily implies the inaccuracy of some records.  Further, because 29 C.F.R. § 516.2 requires employers to "maintain and preserve payroll or other records . . . with respect to each employee to whom section 6 or both sections 6 and 7(a) of the Act apply," see 29 C.F.R. § 516.2, and in light of the Court's holding supra that sections six (6) and seven (7) of the FLSA apply to Defendants and their employees, as well as the undisputed facts indicating that many employees saw missing hours during pay periods, with others missing

entire weeks, (Doc. No. 58-4 ¶¶ 25–26), it follows that Defendants violated 29 U.S.C. § 211(c)'s accurate recordkeeping requirement.  Because Defendants offer no argument to the contrary, and considering the evidence of record, which clearly supports Plaintiff's position, the Court finds that no reasonable factfinder could conclude that Defendants complied with the FLSA recordkeeping provision and will accordingly grant Plaintiff's motion as to Defendants' FLSA recordkeeping violations.  Before addressing Plaintiff's arguments as to the appropriate remedies for Defendants' FLSA violations, the Court first evaluates Defendants' motion for summary judgment.

### B.      Defendants' Motion for Summary Judgment

In their brief in support of their motion for summary judgment, Defendants argue that: (1) they do not engage in interstate commerce (Doc. No. 75 at 3–8); (2) their employees are exempt from overtime (id. at 8–9); (3) the Department of Labor fact sheets and final rule (clarifying the scope of the Companionship Exemption) are "incoherent;" (id. at 7–17); (4) the Department of Labor fact sheets and rule interpreting the Companionship Exemption, 29 C.F.R. § 552.109, are entitled to no deference (id. at 17–19); (5) 29 C.F.R. § 552.109 is void for vagueness (id. at 19–21); (6) liquidated damages are inappropriate in this case (id. at 21); (7) the Court should not use a three (3) year lookback period for determining Defendants' alleged FLSA violations (id. at 21–23); and (8) the Department of Labor lacks the authority to pursue this litigation (id. at 23–30). To that end, the Court determines whether to grant Defendants' summary judgment on the question of whether they are covered under the FLSA, before discussing their argument that Acting Secretary Su lacks the authority to pursue this litigation.[10]

---

[10]  The Court will only examine these two (2) questions pertaining to Defendants' motion, because Defendants assert no arguments on whether they failed to adhere to the FLSA minimum

1.      **Whether Defendants and their Employees are Covered Under the FLSA**

In evaluating Defendants' motion for summary judgment as to their position that they, and their employees, are not covered by the FLSA and thus not subject to the statutory requirements contained therein, the Court views the record as a whole and construes all facts in the light most favorable to Plaintiff, as the non-moving party.

Defendants maintain that they do not engage in interstate commerce and thus the FLSA does not apply to them.  (Doc. No. 75 at 4.)  As it pertains to Defendant WiCare's enterprise coverage, Defendants assert that they do not act as "enterprise" pursuant to Section 203 of the FLSA.  (Id. at 5.)  Defendants further maintain that their employees are not covered by the FLSA, because their employees work in private homes, do not distribute, purchase, or sell goods in interstate commerce, and remain within the Commonwealth of Pennsylvania, never crossing state lines as part of their work.  (Id. at 7.)  Defendants assert that any materials utilized by employees in the performance of their duties "are provided by the client from within the client's household" and thus no interstate transactions occur.  (Id. at 8.)  In response, Plaintiff reiterates her arguments discussed supra, namely that Defendants and their employees are covered entities under the FLSA and that no FLSA exemption applies.  (Doc. No. 79 at 2–5.)

In considering the foregoing, the Court reiterates that, as discussed supra in connection with Plaintiff's motion for summary judgment, there is no genuine dispute of material fact that Defendant WiCare and its employees are engaged in domestic service and therefore covered by the FLSA.  However, Defendants offer alternative arguments in attempting to remove themselves from the FLSA's reach.  Defendants maintain that the Department of Labor's fact sheets and final

wage, overtime, and recordkeeping provisions.  Any arguments discussing the appropriate remedies will be addressed infra in the remedies section of this memorandum.

regulation do not clearly explain when an entity should be exempted from the FLSA's coverage. (Doc. No. 75 at 9–18.)  Defendants further argue that the final regulation clarifying the Department of Labor's Companionship Exemption, 29 C.F.R. § 552.109, is "void for vagueness."  (Id. at 19–21.)  The Court addresses each argument in turn.

### a.      Department of Labor Fact Sheets

Defendants rely heavily on two Department of Labor fact sheets interpreting the Companionship Exemption to the FLSA: Fact Sheet #25 and Fact Sheet #79A.  (Id. at 10.)  As discussed supra, Congress crafted a FLSA exemption for "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)."  See 29 U.S.C § 213(15).  In other words, the minimum wage and overtime provisions of the FLSA do not apply to those who engage in companionship services, subject to regulations promulgated by the Secretary of Labor.  The Secretary of Labor accordingly provided several pieces of guidance, including the cited fact sheets.

Defendants first cite Fact Sheet #25, which the Wage and Hour Division of the United States Department of Labor promulgated in September of 2013.  (Doc. No. 76-4.)  Fact Sheet #25A outlines how the FLSA Companionship Exemption applies to workers in the home health care industry.  The fact sheet states, in relevant part, as follows: "[a]n employee who performs companionship services in or about the private home of the person by whom he/she is employed is exempt from the FLSA's minimum wage and overtime requirements if all criteria of the exemption are met."  (Doc. No. 76-4 at 2.)  Defendants assert that Defendant Hernandez could have taken the language of this fact sheet to mean that his employees, who provide home

companionship services, need not be paid minimum wage or overtime payments.  (Doc. No. 75 at 11.)

Defendants also cite Fact Sheet #79A, which the Wage and Hour Division of the United States Department of Labor also published in September of 2013.  (Doc. No. 76-5.)  Fact Sheet #79A further explains how companionship services are classified under the FLSA.  The document explains who can claim the Companionship Exemption, delineating that "the exemption is only available to the individual, family, or household solely or jointly employing the worker, and only if the companionship services duties test set forth above is met."  See (id.). Referring to the "companionship services duties test," Fact Sheet #79A states:

> [u]nder the revised regulations, effective January 1, 2015, the term 'companionship services' means the provision of fellowship and protection for an elderly person or a person with an illness, injury, or disability who requires assistance in caring for himself or herself. Such individuals are sometimes referred to as 'consumers' in this fact sheet. The term 'companionship services' also includes the provision of care, when the care is provided attendant to and in conjunction with the provision of fellowship and protection, and does not exceed 20 percent of the total hours worked per consumer and per workweek.

See (id.).  Fact Sheet #79A further states that:

> [t]hird party employers of direct care workers (such as home care staffing agencies) are not permitted to claim the exemption for companionship services. Third party employers may not claim the exemption even when the employee performs companionship services and is jointly employed by the third party employer and the individual, family, or household using the services. Accordingly, third party employers must pay their workers the Federal minimum wage for all hours worked and overtime pay at time and one-half of the regular rate of pay for all hours worked over 40 in a workweek.

See (id.).  As it pertains to Fact Sheet #79A, Defendants assert that the language explaining who can claim the exemption is "word salad" and further maintain that the "only available" language, in which the Department of Labor specified that "the exemption is only available to the individual, family, or household solely or jointly employing the worker, and only if the companionship services duties test set forth above is met," contradicts the plain language of the

FLSA.  (Doc. No. 75 at 12–13.)  Defendants maintain that the reference to "home care staffing agencies" is confusing because the language appears to restrict the universe of potential exemption claimants.  See (id. at 14).  Further, Defendants claim that the rest of the paragraph "could be interpreted in 10 different ways."  (Id. at 14.)

In response, Plaintiff asserts that: (1) Defendants conflate sub-regulatory guidance, which lacks the force of law, with 29 C.F.R. § 552.109, the final regulation clarifying the parameters of the Companionship Exemption, which underwent notice and comment rulemaking; and (2) the fact sheets are sufficiently clear as to the application of the Companionship Exemption, and Defendants only allege confusion to attempt to justify their non-compliance.  (Doc. No. 79 at 13–14.)

The Court observes that the cited fact sheets promulgated by the Department of Labor are both pieces of sub-regulatory guidance, insofar as they did not go through notice and comment rulemaking and thus do not have the force of law.  See Hayes v. Harvey, 903 F.3d 32, 46 (3d Cir. 2018) (holding that "guidance documents lack the force of law" in discussing the level of deference given to said documents).  Both Fact Sheet #25 and #79A also contain the same disclaimer at bottom, which reads: "[t]he contents of this document do not have the force and effect of law and are not meant to bind the public in any way.  This document is intended only to provide clarity to the public regarding existing requirements under the law or agency policies." (Doc. Nos. 76-4 at 3; 76-5 at 4.)  To the extent that Defendants rely on either of these guidance documents to justify their non-compliance with the FLSA, the Court finds such an argument unavailing.

###### b.        The Companionship Exemption

As discussed <u>supra</u>, in drafting the FLSA, Congress crafted an exemption for "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)."  <u>See</u> 29 U.S.C § 213(15).  In 2015, the Department of Labor clarified the application of the Companionship Exemption from the FLSA overtime requirement, providing that "[t]hird party employers of employees engaged in companionship services within the meaning of § 552.6 may not avail themselves of the minimum wage and overtime exemption provided by section 13(a)(15) of the Act, even if the employee is jointly employed by the individual or member of the family or household using the services." <u>See</u> 29 C.F.R. § 552.109.

Relevant here, the employer bears the burden of proving that they qualify for a FLSA exemption.  <u>See</u> <u>Martin v. Cooper Elec. Supply Co.</u>, 940 F.2d 896, 900 (3d Cir. 1991) (holding that "[t]he burden of proving these [FLSA] exemptions is upon the employer, and if the record is unclear as to some exemption requirement, the employer will be held not to have satisfied its burden").  Additionally, in evaluating the parties' arguments, the Court must give "considerable" weight to the Department of Labor's regulations.  <u>See</u> <u>Brooks v. Vill. of Ridgefield Park</u>, 185 F.3d 130, 138 n.7 (3d Cir. 1999) (holding that "unlike interpretive bulletins, regulations are given 'considerable and in some cases decisive weight'" (cleaned up) (citing <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134, 140 (1944)).

Defendants assert that: (1) they are not a third-party employer; (2) the FLSA explicitly exempts their employees from overtime regulations; and (3) the fact sheets and 29 C.F.R. § 552.109 are "contradictory, confusing, and open to a multitude of interpretations."  (Doc. No. 75

at 17.)  Responding to these arguments, Plaintiff asserts that Defendants' employees are entitled

to overtime pursuant to 29 C.F.R. § 552.109.  (Doc. No. 79 at 3.)  Plaintiff claims that "a cursory

review of Defendants' employee handbook and the Defendants' website shows that WiCare is a

third-party employer."  (Id. at 5.)  Plaintiff further maintains that, even adopting Defendants'

cramped definition of a third-party employer, the regulation is clear that only individuals or

members of the family household qualify for the Companionship Exemption.  (Id.)  Additionally,

Plaintiff asserts that, even if Defendants could claim the exemption, which they cannot,

"WiCare's own employee handbook, and Defendant's deposition testimony, strongly suggest[]

that its employees spend more than twenty (20) precent of their time assisting clients with daily

living activities during a workweek," and it follows that Defendant WiCare's employees would

fail the "duties test" and still not qualify for the exemption. (Id.)[11]

   Upon review of the cited materials and relevant authority, the Court concludes that

Defendants fail to raise a genuine dispute of material fact as to whether Defendant WiCare is a

third-party employer.  The Court accordingly finds that Defendant WiCare is a third-party

employer and thus not eligible to claim the Companionship Exemption.  See Tagaeva v. BNV

Home Care Agency, Inc., No. 16-cv-06869, 2018 WL 1320661 at *1 (E.D.N.Y. Mar. 13, 2018)

(discussing the relevant regulation and noting that someone is employed by a third-party

employer when they do not work directly for "the person to whom they provide their services").

The evidence of record and the parties' filings clearly reflect that Defendant WiCare is a limited

liability company which provides companionship services to clients.  (Doc. No. 58-4 ¶¶ 2–4.)

---

[11] The "Duties Test" originated in 29 C.F.R. § 552.6(b) and states that, if more than twenty (20) percent of an employee's time is spent providing care related to the "tasks of daily living," such as feeding, dressing, meal preparation, or assistance with the taking of medications, then the Companionship Exemption does not apply to said employee.  See 29 C.F.R. § 552.6(b).

Defendant WiCare's employee handbook confirms as much.  See (Doc. No. 63-7 (providing that Defendant WiCare is the employer)).  Accordingly, Defendants raise no genuine dispute of material fact as to their status as a third-party employer.  Defendants assert, in the DSUMF, that roughly three-quarters of their employees "are direct family members of WiCare clients" (Doc. No. 76 ¶ 10), but even assuming this is true, it would not change the fact that Defendants have presented no evidence upon which a reasonable finder of fact could conclude that they are not a third-party employer within the meaning of 29 C.F.R. § 552.109 and thus eligible for the Companionship Exemption.[12]

### c. Whether the DOL's Rule Clarifying the Companionship Exemption is Void for Vagueness

---

[12]  The Court notes that also pending before the Court is Defendants' motion for a status conference.  (Doc. No. 87.)  In their motion, Defendants assert that there are outstanding issues to discuss with the Court, namely the impact of the United States Supreme Court's recent decision in Loper Bright Enterprises v. Raimondo ("Loper Bright") on the pending motions for summary judgment.  In Loper Bright, the Supreme Court of the United States overruled Chevron v. Natural Resources Defense Council, holding that courts should no longer give deference to agency interpretations of ambiguous statutes.  See Loper Bright Enter., v. Raimondo, 603 U.S. ___ (2024).  However, the opinion notes that "when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it."  See id. at 35.  In this case, the delegation of statutory authority to the Secretary of Labor is clear.  29 U.S.C. § 213(15) states, "any employee employed on a casual basis in domestic service employment to provide babysitting services or any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)."  See 29 U.S.C. § 213(15) (emphasis added).  Defendants do not argue, nor does the Court find any reason to conclude, that this delegation of power to the Secretary of Labor is unconstitutional.  See Gundy v. United States, 588 U.S. 128, 135 (2019) (holding that a delegation of authority to an agency is constitutional so long as "Congress 'lay[s] down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform'") (citation omitted).  Accordingly, the Secretary has the authority to shape the parameters of the Companionship Exemption, and this delegation is sufficiently unambiguous, such that the Court need not examine the appropriate level of deference to be given to this regulation.  Since Defendants' motion for a status conference is based on the alleged impact of Loper Bright on the pending motions, and the Court concludes that Loper Bright does not impact the Court's decision on said motions, no such status conference is necessary, and the Court will therefore deny Defendants' motion.

As an alternative argument, Defendants assert that 29 C.F.R. § 552.109 is "void for vagueness." (Doc. No. 75 at 19.) Defendants maintain that applying this regulation against them would deprive them of due process of law, asserting that when the meaning of a regulation is so unclear that people of "common intelligence" must speculate as to its meaning, then it follows that said regulation should be "deemed vague and void." (Id. at 20–21 (citation omitted).) Arguing to the contrary, Plaintiff claims that 29 C.F.R. § 552.109 clearly prohibits Defendants from utilizing the Companionship Exemption. (Doc. No. 79 at 11.) Plaintiff cites the evidence of record in arguing that it is undisputed that the home care employees denied overtime compensation are employed by Defendants, further arguing that because Defendants are not "the individual receiving care nor a member of that individual's family or household," it follows that Defendants are third-party employers and thus the regulation does not permit them to claim the Companionship Exemption. (Doc. No. 79 at 12–13.)

As an initial matter, "in the civil context, statutes need not be as precise as in the criminal context and are, therefore, less likely to be invalidated under a void-for-vagueness challenge." See Borden v. Sch. Dist. of Twp. of E. Brunswick, 523 F.3d 153, 167 (3d Cir. 2008). However, "[a] statute or regulation is void for vagueness if it either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." See Via v. Taylor, 224 F. Supp. 2d 753, 766 (D. Del. 2002) (citing Zwickler v. Koota, 389 U.S. 241, 248 (1967)). "There are two different void for vagueness challenges: facial or as-applied." Dailey v. City of Philadelphia, 417 F. Supp. 3d 597, 616 (E.D. Pa. 2019), aff'd, 819 F. App'x 71 (3d Cir. 2020). "A party asserting a facial challenge 'must establish that no set of circumstances exists under which the Act would be valid.'" Heffner v. Murphy, 745 F.3d 56, 65 (3d Cir. 2014). "By contrast, '[a]n as-applied attack . . . does not

contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right.'" Id. (citation omitted).  Defendants do not specify the nature of their attack on the regulation.

In considering the foregoing, the Court concludes that it is irrelevant whether Defendants launch an as-applied or facial challenge to 29 C.F.R. § 552.109.  Regarding a facial challenge, Defendants have not presented any argument that there is "no set of circumstances" under which 29 C.F.R. § 552.109 would be valid.  To the contrary, the regulation is sufficiently clear, insofar as it lays out how the Companionship Exemption applies and to whom it applies.  The regulation states that "[t]hird party employers of employees engaged in companionship services within the meaning of § 552.6 may not avail themselves of the minimum wage and overtime exemption provided by section 13(a)(15)."  See 29 C.F.R. § 552.109(a) (emphasis added).  There is nothing vague in this regulatory language, as it clearly spells out that third party employers cannot claim the Companionship Exemption.

Even construing Defendants' attack as an as-applied challenge, the Court finds that Defendants do not cite any authority for the proposition that someone "of common intelligence" would need to "guess" at the meaning of the regulation.  See Taylor, 224 F. Supp. 2d at 766.  To the contrary, as highlighted supra, the regulatory language clearly specifies those who are eligible for the Companionship Exemption and delineates that third-party employers of domestic service employees are not exempted from the FLSA's overtime requirement.  Accordingly, the Court is unpersuaded by Defendants' position that 29 C.F.R. § 552.109 is void for vagueness.

In sum, 29 U.S.C § 202(a) delineates that "Congress further finds that the employment of persons in domestic service in households affects commerce," see 29 U.S.C. § 202(a), and since the FLSA minimum wage and overtime provisions apply to employers and employees who are

"engaged in commerce," it follows that Defendant WiCare and its employees, who perform domestic service, are covered by the FLSA and subject to the minimum wage, overtime, and recordkeeping provisions contained therein.[13]  Defendants provide no evidence permitting a reasonable finder of fact to conclude that there is a genuine dispute as to the applicability of the FLSA to Defendant WiCare and its employees, and because Defendants' attempts to remove themselves from the FLSA's coverage are unavailing, the Court will deny Defendants' motion for summary judgment on the question of whether Defendant WiCare and its employees are covered under the FLSA.

**2.    Authority of the Acting Secretary of Labor to Initiate Enforcement Proceedings**

Additionally, Defendants advance the novel argument that Plaintiff, Julie A. Su, the Acting Secretary of the United States Department of Labor, lacks the authority to pursue these enforcement proceedings against them.  (Doc. No. 75 at 23–30.)  Defendants argue that the Department of Labor "has no standing or actual authority to bring enforcement actions," especially when they involve policy decisions, such as the decision to pursue liquidated damages, because Acting Secretary Su has not been confirmed by the Senate "and it is public record that she will never be confirmed by the Senate."  (Id. at 23.)  Defendants urge the Court to

---

[13]  The Court finds it worth noting that the power of Congress to regulate interstate commerce is broad and includes the "power to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce."  See Gonzales v. Raich, 545 U.S. 1, 17 (2005).  Although Defendants do not challenge the constitutionality of the FLSA, they do argue that because they do not explicitly engage in interstate commerce, the FLSA does not apply to them.  (Doc. No. 75 at 4.)  However, Congress, in acting pursuant to its Commerce Clause power, explicitly enumerated that "Congress further finds that the employment of persons in domestic service in households affects commerce."  See 29 U.S.C. § 202(a).  Therefore, the Court's finding supra that Defendants are engaged in domestic service places Defendants' activities within the reach of the FLSA.

find that Acting Secretary Su cannot rely on 29 U.S.C. § 552, which outlines the powers of the Deputy Secretary when filling in for the Secretary, because the statute delineates powers on a temporary basis and does not "authorize the Deputy Secretary to assume the Secretary's role permanently." (Id. at 24.)  Defendants maintain that the text of 29 U.S.C. § 552 precludes Acting Secretary Su from continued service in her position.  (Id.)  Additionally, Defendants cite the Federal Vacancies Reform Act ("FVRA"), arguing that: (1) the FVRA sets a two hundred and ten (210) day limit on an official serving in acting capacity; (2) the FVRA would permit Acting Secretary Su to serve for more than two years, unconfirmed by the Senate; and (3) reliance on the FVRA is thus inappropriate and to permit Acting Secretary Su to continue serving under this statute would be constitutionally problematic.  (Id. at 26–27.)  Defendants ask the Court to find that:

> Ms. Su cannot continue to operate as Acting Secretary of Labor, had no authority to deviate from the discretion-based internal guidance promulgated by Martin J. Walsh, that Ms. Su's subordinates acting under the cloak of her authority have no authority to deny (or accept, for that matter) Defendants' offers of settlement, and indeed that Ms. Su's agents have no present authority to continue any enforcement actions against Defendants.

(Id. at 30.)

In response, Plaintiff asserts that Acting Secretary Su was confirmed as Deputy Secretary of Labor, began serving as Acting Secretary upon the resignation of former Secretary Martin J. Walsh, and then lawfully began to perform the Secretary's duties pursuant to 29 U.S.C. § 552. (Doc. No. 79 at 15–16.)  Plaintiff maintains that 29 U.S.C. § 552 permits Acting Secretary Su to serve as Acting Secretary and make the attendant policy and enforcement decisions.  (Id. at 16.) Finally, Plaintiff asserts that, pursuant to the Appointments Clause, Acting Secretary Su has been nominated, not appointed, and therefore nothing in the text of that clause precludes her from remaining Acting Secretary and exercising the powers of that office.  (Id. at 19–20.)

35

As an initial matter, 29 U.S.C. § 552 states that

[t]he Deputy Secretary shall perform such duties as may be prescribed by the Secretary of Labor or required by law.  The Deputy Secretary shall (1) in case of the death, resignation, or removal from office of the Secretary, perform the duties of the Secretary until a successor is <u>appointed</u>, and (2) in case of the absence or sickness of the Secretary, perform the duties of the Secretary until such absence or sickness shall terminate.

<u>See</u> 29 U.S.C. § 552 (emphasis added).  Put simply,

29 U.S.C. § 552 allows for a Deputy Secretary of Labor to perform the duties of the Secretary of Labor if the Secretary dies, resigns or is removed. The Senate confirmed Acting Secretary Su as the Deputy Secretary on July 13, 2021 and she began serving as Acting Secretary of Labor on March 11, 2023, when Secretary of Labor Martin Walsh resigned.

<u>See</u> <u>Su v. Starbucks Corp.</u>, No. 23-cv-00045, 2023 WL 6461146, at *2 (W.D. Wash. Oct. 4, 2023).  It is undisputed here that no successor to Secretary Walsh has been confirmed by the United States Senate.  (Doc. Nos. 75 at 23; 79 at 6.)[14]  Accordingly, because no successor has been "appointed" pursuant to 29 U.S.C. § 552, the Court finds that Acting Secretary Su can properly bring this enforcement action against Defendants and will deny Defendants' motion for summary judgment on this question.[15]

### D.    Remedies

Because the Court granted Plaintiff's motion for summary judgment on the questions of whether: (1) Defendants are covered under the FLSA; (2) Defendant Hernandez is covered as an

---

[14]  Pending before the Court is Plaintiff's motion (Doc. No. 89) to amend PCUMF as it relates to this point.  Because the Court did not rely on Plaintiff's admission in making this determination, the Court finds it unnecessary to permit Plaintiff to amend PCUMF and will accordingly deny the motion.

[15]  The Court will follow the "usual practice" of "avoid[ing] the unnecessary resolution of constitutional questions," <u>see</u> <u>Nw. Austin Mun. Util. Dist. No. One v. Holder</u>, 557 U.S. 193, 197 (2009), and will not opine as to the constitutionality of the FVRA.

employer under the FLSA; (3) Defendants violated FLSA's minimum wage provision; (4) Defendants violated FLSA's overtime provision; and (5) Defendants violated FLSA's recordkeeping provision, while denying Defendants' motion for summary judgment on the question of whether they were covered under the FLSA and on the issue of Acting Secretary Su's authority to pursue this litigation, the Court must assess the appropriate remedies for the violations.  The Court first determines the appropriate statute of limitations for the calculation of damages, and then assesses Plaintiff's entitlement to liquidated damages and injunctive relief.

### 1.    Willfulness Inquiry

As a general matter, the statute of limitations for the initiation of claims for "unpaid minimum wages" and "unpaid overtime compensation, or liquidated damages" is two (2) years.  See 29 U.S.C. § 255.  However, the statute expressly provides that, when a cause of action arises from a "willful violation" of the FLSA, the statute of limitations increases to three (3) years.  See id.  An employer willfully violates the FLSA when they "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  See McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).  Further, a claimant need not show that the employer acted egregiously to establish the employer's willfulness.  See Stone v. Troy Constr., LLC, 935 F.3d 141, 149 (3d Cir. 2019) (discussing how "Supreme Court case law and our own precedent counsel against a standard for willfulness that requires a showing of egregiousness").  However, "[a]cting only 'unreasonably' is insufficient—some degree of actual awareness is necessary."  See Souryavong v. Lackawanna County, 872 F.3d 122, 126 (3d Cir. 2017) (citation omitted).

      a.      **Plaintiff's Motion for Summary Judgment on the Question of Willfulness**

In the instant case, Plaintiff pursues three (3) years' worth of damages, for the years 2019, 2020, and 2021, thus requiring her to demonstrate that Defendants willfully violated the FLSA. (Doc. No. 1); see also Marcy v. Select Med. Corp., No. 23-cv-00469, 2023 WL 9074622 at *2 n.4 (M.D. Pa. Nov. 1, 2023) (discussing the three-year lookback period for willful FLSA violations).  Plaintiff asserts that Defendants willfully violated the FLSA and accordingly the statute of limitations should be three (3) years.  (Doc. No. 64 at 23–25.)  In support of her position, Plaintiff maintains that there is no genuine dispute of material fact that Defendants attempted to have workers sign away their rights to earn overtime wages, and chose to pay some, but not all, workers the proper overtime premiums.  (Id. at 24.)  Plaintiff further claims that the undisputed facts of record show that Defendants "knew about the requirement to pay an overtime premium prior to DOL's investigation," and additionally notes that Defendant Hernandez has conceded that many workers have still not received back wages, which Plaintiff asserts is indicative of his willfulness in violating the FLSA.  (Id. at 24–25.)  Finally, Plaintiff maintains that Defendants' reliance on the Department of Labor fact sheets is only further proof of their willful violations of the FLSA, because those fact sheets clearly recognize that third-party employers must pay home care workers minimum wages and overtime premiums for hours worked in excess of forty (40) hours in a week.  (Id. at 24.)

Upon consideration of the foregoing, and viewing the record evidence in the light most favorable to Defendants as the non-moving party, the Court will grant Plaintiff's motion for summary judgment as to Defendants' willfulness.  To reiterate, an employer willfully violates the FLSA when they "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  See Richland Shoe Co., 486 U.S. at 133.  Here, it is undisputed

that: (1) Defendants paid some, but not all, of their employees' overtime premiums; (2) Defendant Hernandez did not deny that he learned about the FLSA's overtime requirements prior to the commencement of the Department of Labor investigation and was even informed that he was not appropriately paying overtime wages; and (3) Defendant Hernandez admitted in his deposition that many employees are still missing payment for hours worked during the years 2019 through 2021.  (Doc. No. 58-4 ¶¶ 41–42.)  The Court finds that Defendants' continued failure to pay back wages, even after learning about their mistake in not making those payments, in addition to the fact that Defendants paid some, but not all, employees overtime premiums, demonstrates that Defendants cannot meet their burden of establishing a genuine dispute of material fact on the question of whether they showed a "reckless disregard" for the FLSA.  See Richland Shoe Co., 486 U.S. at 133.  The Court finds especially telling the fact that Defendants' employee contract includes a waiver of overtime wages.  See (Doc. Nos. 63-6 at 87 (Defendant Hernandez's deposition explaining the policy); 63-14 (the employee contract)).  Defendants offer no explanation as to why employees would be required to sign away rights to overtime payments, if they did not know they had the obligation to make such payments, as they argue. Put simply, Defendants cite no evidence to establish a genuine dispute of material fact as to their willful disregard of the statute.  The Court finds that no reasonable factfinder, viewing the evidence of record in the light most favorable to Defendants, could find that this attempt to have workers sign away overtime premium rights, in direct contravention of the FLSA, was anything other than a knowing or reckless disregard for the FLSA's overtime requirement.  See Richland Shoe Co., 486 U.S. at 133; see also Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 69 (2013) (holding that the FLSA "overtime guarantees . . .  cannot be modified by contract").

Accordingly, the Court will grant Plaintiff's motion as to Defendants' willful violations of FLSA, thus permitting a three-year statutory lookback period.

> **b.** **Defendants' Motion for Summary Judgment on the Question of Willfulness**

In Defendants' motion for summary judgment, Defendants assert that their violations of the FLSA were not willful because Defendant Hernandez "consulted Fact Sheets 25 and 79 and spoke with another companionship services company owner to ensure that Wicare complied with FLSA's overtime exemptions." (Doc. No. 75 at 22–23.) In response, Plaintiff repeats many of the arguments made in support of her own motion for summary judgment on this question, discussed supra. (Doc. No. 79 at 6–7.)

The Court again finds that, viewing the evidence of record in the light most favorable to the non-moving Plaintiff, no reasonable factfinder could find for Defendants on this question. In other words, Defendants have not raised a genuine dispute of material fact as to their willful disregard of the FLSA's overtime provisions. The Court again observes that the fact that Defendants induced employees to sign away the right to receive the proper overtime premiums, is indicative of a "knowing" or "reckless disregard" for the FLSA's overtime requirement. See Richland Shoe Co., 486 U.S. at 133. Accordingly, the Court will deny Defendants' motion for summary judgment on the question of willfulness and will permit a three (3) year lookback period to determine the appropriate damages.

> **2.** **Award of Liquidated Damages**

The award of liquidated damages is mandatory under the FLSA, should a plaintiff prevail. See 29 U.S.C. § 260. To avoid liquidated damages, "an employer must show that it acted in good faith and that it had reasonable grounds for believing that it was not violating the Act." See Sec'y United States Dep't of Lab. v. Am. Future Sys., Inc., 873 F.3d 420, 433 (3d Cir.

2017).  "The good faith requirement is 'a subjective one that requires that the employer have an honest intention to ascertain and follow the dictates of the Act.'"  Id. (citing Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 907 (3d Cir. 1991)).  However, the reasonableness inquiry is objective, insofar as the employer must provide evidence permitting a reasonable finder of fact to conclude that that the employer objectively believed they complied with the FLSA.  See Marshall v. Brunner, 668 F.2d 748, 753 (3d Cir. 1982) (discussing the objective nature of the reasonableness inquiry).  The Third Circuit has held that "a defendant employer bears the 'plain and substantial' burden of proving he is entitled to discretionary relief from the FLSA's mandatory liquidated damages provision" which generally requires an employer to show that "he took affirmative steps to ascertain the Act's requirements, but nonetheless, violated its provisions."  See Cooper Elec. Supply Co., 940 F.2d at 907–08.  Defendants bear a heavy burden, because upon a finding of liability "[d]ouble damages are the norm, single damages the exception."  See id. at 908 (citing Walton v. United Consumers Club, Inc., 786 F.2d 303, 310 (7th Cir. 1986)).

### a.    Plaintiff's Motion for Summary Judgment as to Liquidated Damages

Plaintiff argues that she is entitled to summary judgment as to the issue of Defendants' lack of good faith compliance with the FLSA.  (Doc. No. 64 at 26–30.)  First, Plaintiff asserts that Defendants cannot carry their burden of proving subjective good faith, because they did not take affirmative steps to ascertain the FLSA's requirements.  (Id. at 27.)  Plaintiff asserts that, even if Defendants took steps to comply with the FLSA after the Department of Labor initiated their investigation, such steps would be irrelevant to the good faith inquiry.  (Id. at 28.)  Plaintiff further notes that Defendants required employees "to sign contracts that stated that they would only receive one rate for all hours worked," thus waiving their right to overtime wages, and also

declined to consult counsel until after the Department of Labor investigation was well underway. (Id.)

Plaintiff also asserts that Defendants cannot satisfy the objective test, examining whether their belief that they were complying with the FLSA was reasonable.  (Doc. No. 64 at 29.) Plaintiff maintains that no reasonable employer could believe that FLSA's overtime requirements would be satisfied by "paying straight time" and not the statutorily mandated wage.  (Id.)[16] Plaintiff also asserts that Defendants intentionally paid some direct care workers for fewer hours then required by the statute, and further maintains that Defendants cannot offer any plausible or verifiable rationale for this choice.  (Id. at 29–30.)[17]

Upon review of the record evidence and construing all facts in the light most favorable to the non-moving Defendants, and after consulting the relevant authority, the Court finds that Defendants fail to raise a genuine dispute of material fact on the issue of their subjective good faith or objective reasonableness in failing to comply with the FLSA.  First, as it pertains to good faith, the Court finds that Defendants have not cited sufficient evidence to permit a reasonable finder of fact to conclude that they subjectively believed that their actions complied with the FLSA.  See Am. Future Sys., Inc., 873 F.3d at 433 (discussing how an employer must have "an honest intention to ascertain and follow the dictates" of the FLSA).  There is nothing in the

---

[16]  For reference, the employment contract, which can be viewed at Docket Number 63-14, specifies that workers are to be paid a straight ten dollar and fifty cent ($10.50) wage, even for hours worked excess of forty (40) hours in a week.

[17]  To reiterate, Defendants filed only an untimely brief in response to Plaintiff's motion, and the contents contained therein would not change the Court's conclusion, as Defendants fail to point to evidence supporting their subjective good faith or objective reasonableness in attempting to comply with the FLSA.

record indicating that Defendants attempted to contact anyone at the Department of Labor, or even hire an attorney until after the Department of Labor's investigation commenced.

However, even if Defendants could satisfy their burden of demonstrating subjective good faith, the Court further finds that Defendants have failed to present evidence that they objectively believed that they were complying with the FLSA. As discussed supra, the reasonableness inquiry requires an employer to provide evidence permitting a reasonable finder of fact to conclude that that the employer objectively believed they complied with the FLSA. See Brunner, 668 F.2d at 753. Even viewing the facts in the light most favorable to Defendants, the Court still finds that Defendants have not carried their burden. The evidence of record indicates that Defendants paid some, but not all, employees the proper overtime, and further shows that Defendants had employees sign away their right to the proper overtime premium. See (Doc. Nos. 63-6 at 504; 63-14); see also Genesis Healthcare Corp., 569 U.S. at 69 (holding that the FLSA "overtime guarantees . . . cannot be modified by contract"). Accordingly, because Defendants have not met their burden, and observing that "[d]ouble damages are the norm, single damages the exception," see Cooper, F.2d at 908 (citation omitted), the Court will grant Plaintiff's motion for summary judgment on the question of Plaintiff's entitlement to liquidated damages in the amount of five hundred and twenty-nine thousand, seven hundred and seventy dollars and nine cents ($529,770.09).[18]

_____

[18] Defendants' total backpay owed is as follows: sixty-one thousand three hundred and fifty-four dollars and eighty-four cents ($61,354.84) in minimum wage back wages and four hundred and sixty-eight thousand, four hundred and fifteen dollars and twenty-five cents ($468,415.25) in overtime premium back wages, for a total amount of five hundred and twenty-nine thousand, seven hundred and seventy dollars and nine cents ($529,770.09). Accordingly, Defendants owe five hundred and twenty-nine thousand, seven hundred and seventy dollars and nine cents ($529,770.09) in back wages and five hundred and twenty-nine thousand, seven hundred and seventy dollars and nine cents ($529,770.09) in liquidated damages, for a total of one million, fifty-nine thousand, five hundred and forty dollars and eighteen cents ($1,059,540.18).

> **b.      Defendants' Motion for Summary Judgment as to Liquidated Damages**

As to Defendants' motion for summary judgment on the issue of liquidated damages, upon review of the record evidence and construing all facts in the light most favorable to the non-moving Plaintiff, the Court concludes that Defendants have not met their burden and their motion for summary judgment will be denied.  Defendants assert that "neither Hernandez nor WiCare willfully violated the FLSA" because Defendant Hernandez reviewed the Department of Labor Fact Sheets and "spoke with a fellow business owner, and came to the reasonable and lawful conclusion that WiCare would not be required to pay overtime wages to its employees." (Doc. No. 75 at 21.)  Plaintiff responds that Defendants cannot meet their burden of establishing that liquidated damages should not be awarded here, because they cannot cite record evidence revealing that they subjectively believed that they were complying with the FLSA in good faith, nor that they had objectively reasonable grounds for so doing.  (Doc. No. 79 at 7–8.)

For the reasons discussed supra, the Court finds that Defendants have failed to carry their evidentiary burden as to the issue of liquidated damages, as no reasonable finder of fact could conclude that they subjectively believed that they complied with FLSA in good faith, or that such a belief was objectively reasonable in light of the evidence of record.  Accordingly, the Court will deny Defendants' motion for summary judgment on the issue of liquidated damages.

> **3.      Permanent Injunctive Relief**

---

The Court observes that Defendants assert, in several filings, that Plaintiff seeks one million, one hundred and eighty-one thousand, one-hundred and thirty-six dollars and eighteen cents ($1,181,136.18) in damages.  See (Doc. No. 94-1 at 2).  However, this number is inconsistent with Plaintiff's requested relief.  See (Doc. No. 58-1 (proposed order seeking five hundred and twenty-nine thousand, seven hundred and seventy dollars and nine cents ($529,770.09) in back wages and five hundred and twenty-nine thousand, seven hundred and seventy dollars and nine cents ($529,770.09) in liquidated damages, for a total of one million, fifty-nine thousand, five hundred and forty dollars and eighteen cents ($1,059,540.18))).

The question of whether injunctive relief is warranted "rests within the Court's sound discretion." See Walsh v. E. Penn Mfg. Co., 555 F. Supp. 3d 89, 137 (E.D. Pa. 2021) (citing 29 U.S.C. § 517). "Factors that district courts consider in deciding whether to issue an injunction include the employer's past conduct, current conduct, and, most importantly, whether the employer can be counted on to comply with the FLSA in the future." Mosluoglu, Inc., 2023 WL 5972044, at *5 (citing A-1 Mortg. Corp., 934 F. Supp. 2d at 815). Accordingly, the Court may permanently enjoin Defendants from violating the FLSA pursuant to 29 U.S.C. § 517. "Some courts have recognized that FLSA violations should be enjoined when the court is not fully convinced that a recurrence of the violation is not probable." Solis, 934 F. Supp. 2d at 815.

As to the appropriateness of permanent injunctive relief, Plaintiff asserts that "Defendants wantonly violated the FLSA for years. Defendants made no effort to comply with the law prior to the start of the Department of Labor's investigation, and even after the investigation started, Defendants failed to fix what they claim were 'clerical errors' years after the 'errors' occurred." (Doc. No. 64 at 31.) Plaintiff maintains that Defendants committed several deliberate acts, namely including a waiver of appropriate overtime wages in its employment contract, and even after being told of their violations, still have not paid employees the appropriate back wages. (Id. at 31–32.) Plaintiff claims that a "permanent injunction is necessary to ensure that [Defendants] current workers are protected." (Id. at 32.) Defendants' untimely brief opposing Plaintiff's motion for summary judgment fails to address Plaintiff's argument on this point.

The Court is persuaded by Plaintiff's argument that permanent injunctive relief is warranted here. In undertaking this inquiry, the Court considers "the employer's past conduct, current conduct, and, most importantly, whether the employer can be counted on to comply with the FLSA in the future." See Mosluoglu, Inc., 2023 WL 5972044, at *5. Here, the employer's

past conduct is troublesome.  Defendants disregarded the FLSA's overtime and minimum wage

requirements, and the undisputed evidence of record reflects that they even tried to get

employees to sign away their statutory rights to the appropriate overtime premiums.  See (Doc.

No. 63-14).  Although the Court is unaware of Defendants' current conduct, the fact that

Defendants still have not paid some employees the proper back wages compels the Court to find

that Defendants cannot "be counted on to comply with the FLSA in the future."  See Mosluoglu,

Inc., 2023 WL 5972044, at *5.  Accordingly, injunctive relief is warranted, and the Court will

grant Plaintiff's motion on this issue.  The Court next addresses Plaintiff's motion to strike.

### E.    Plaintiff's Motion to Strike

Plaintiff asserts that the Court should strike Defendants' "Exhibit T" (Doc. No. 70-20)

from the docket of this case and any reference to this exhibit in Defendants' summary judgment

filings.  (Doc. No. 78 at 1.)  In so arguing, Plaintiff maintains that, when the Court ordered

Defendants to refile its summary judgment brief in compliance with the designated page limit,

the Court "did not authorize Defendants to include additional evidence."  (Id. at 2.)

Defendants respond to Plaintiff's argument by asserting that they added "Exhibit T" in

good faith and after consulting with the Local Rules of this Court.  (Doc. No. 81 at 6.)

Defendants maintain that this exhibit is merely an affidavit in which Defendant Hernandez

swears that he told the truth, referring to statements he made in Defendants' original statement of

undisputed facts.  (Id.)  Defendants maintain that Plaintiff never explains why the affidavit

should be stricken, and further claims that said affidavit is admissible as a matter of law.  (Id. at

9.)

Upon consideration of the foregoing, the Court will deny Plaintiff's motion to strike

"Exhibit T."  Although motions to strike are authorized pursuant to Federal Rule of Civil

Procedure 12(f), that rule provides no basis for striking material like that at issue here, as Rule

12(f) applies specifically to pleadings.  See Fed. R. Civ. P. 12(f) ("[t]he court may strike from a

pleading"); 2 Moore's Federal Practice §12.37[2] (Matthew Bender 3d Ed.) (stating that "[o]nly

material included in a 'pleading' may be the subject of a motion to strike, and courts have been

unwilling to construe the term broadly").  Accordingly, the Court declines to strike "Exhibit T"

and any references to "Exhibit T" in Defendants' summary judgment filings.  Rather, because the

Court instructed Defendants to refile "a brief in support of their motion for summary judgment"

(Doc. No. 74 at 3), and did not authorize the filing of new exhibits in support of said motion, the

Court is persuaded that the better approach is to simply disregard "Exhibit T" and any references

to said exhibit, which are improperly before the Court.  See Sfakianos v. Shelby County Gov't,

No. 08-cv-02172, 2010 WL 4791680, at *2 (W.D. Tenn. Aug. 2, 2010) (recognizing that the

federal rules do not provide a means to strike exhibits filed in connection with an opposition

brief and therefore choosing to exclude from consideration any portions of exhibits not properly

before the court); Lombard v. MCI Telecom. Corp., et al., 13 F. Supp. 2d 621, 625 (N.D. Ohio

1998) (same); see also Dillon v. Village of Piketon, Ohio, et al., No. 10-cv-00888, 2011 WL

2632802, at *2 (S.D. Ohio July 5, 2011) (declining to strike affidavit submitted in opposition to

12(b)(6) motion but instead disregarding all matters not properly before the court).

Therefore, in accordance with the above discussion, the Court will deny Plaintiff's

motion to strike while disregarding "Exhibit T" (Doc. No. 70-20) and references to "Exhibit T"

in Defendants' summary judgment filings.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff's motion for summary judgment in its entirety and will deny Defendants' motion for summary judgment in its entirety. Furthermore, the Court will deny Plaintiff's motion to strike.  An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania